CALVERT FIRE INSURANCE CO. *v.* EATON.

5-957                                    289 S. W. 2d 896

Opinion delivered May 7, 1956.

*Kaneaster Hodges,* for appellant.

*Harry L. Ponder* and *D. Leonard Lingo,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Roland Eaton, purchased an automobile for $675 from R. C. Tate. Appellant, Calvert Fire Insurance Co., carried collision coverage on the car, with the usual $50 deductible clause. On November 21, 1953, the day following the purchase of the car, it was totally wrecked. Appellee brought this suit to collect from appellant $122 alleged due on the insurance contract. He alleged in his complaint: "On November 21, 1953, while said policy was in full force, plaintiff's automobile was damaged in a collision. An adjuster, acting as agent for defendant, called upon plaintiff, and it was agreed between them that the automobile was a total loss, and that its actual cash value at the time of loss was $675.00. From this amount there was deducted $50.00 leaving a balance due from defendant to the plaintiff of $625.00. The adjuster, acting for defendant, informed plaintiff that the salvage from the wreck had been sold by the adjuster to a third party for a net amount of $122.00 and that this amount would be paid by the purchaser to plaintiff. Relying upon the assurance of the adjuster that $122.00 would be paid to him, plaintiff agreed to accept from defendant $503.00 representing the amount due him after deducting $50.00 and $122.00 from the agreed actual value of $675.00. The balance of $122.00 due to this plaintiff from defendant, under his policy of insurance, has not been paid, either by the purchaser of the salvage, or defendant, although demand has been made." Appellant answered with a general denial, and in addition pleaded that: "On December 22, 1953, Roland Eaton and B. F. Eaton executed and delivered to the defendant, Calvert Fire Insurance Company, a Loss or Damage Agreement by the terms of which the said Messrs. Eaton represented and agreed that the total loss or damage resulting to them from the automobile mishap above mentioned was in the sum of $503.00 * * *

"In consideration of and in reliance upon the * * * Loss or Damage Statement, the defendant

Company issued its draft in the amount of $503.00 on January 22, 1954 and, upon the direction of plaintiff, delivered the same to Commercial Credit Corporation of Jonesboro, Arkansas.

"The entire agreement of the parties in settlement of the loss was integrated into the above mentioned written instrument. The plaintiff cannot by parol engraft other or different terms upon the written agreement.

"The defendant Company issued and delivered its settlement draft in reliance upon the above mentioned Loss or Damage Agreement and plaintiff is estopped to deny or controvert its terms."

Trial before the court sitting as a jury resulted in a judgment for appellee for the amount sought, and this appeal followed. For reversal appellant argues: "The Loss or Damage Agreement of the parties was an integration of all their parol understandings and the plaintiff cannot vary or add to it by parol testimony. Hence, the parol testimony of plaintiff and other witnesses was inadmissible; the defendant issued and delivered its settlement draft in reliance upon the Loss or Damage Agreement and the plaintiff is estopped to deny or controvert its terms; the Contract of Insurance provides there shall be no abandonment to the Company," and appellee, was, therefore, bound by this release. Appellant would be right in its contention if there were no substantial evidence to substantiate appellee's contention that the release agreement was obtained by misrepresentation and fraud, (whether intentional or unintentional) on the part of appellant's agent, Sanders, in procuring the release agreement.

After a careful review of the evidence presented, we have concluded that there was substantial evidence of fraud as alleged by appellee. The evidence shows that appellant, insurance company, took possession of the salvage through its agent, Sanders, asked for bids and secured a bid from Charlie Metzler of $122 for the salvage. Sanders and appellee, Eaton, agreed that the cash

value of the car was $675 less the $50 deduction, — or $625 —, and that the net amount due on the insurance contract was $625. Appellee Eaton testified that he was to get $625, that Mr. Sanders paid $503 and that that is all he, Eaton, has gotten out of it. He further testified that they wanted him to sign the release so that the car could be sold for salvage, that the insurance company was selling it for salvage, that he, Eaton, took no bids on the salvage and that Mr. Sanders did not read the release to him before he signed it and that he did not read it. "Q. Did Mr. Sanders tell you whether or not you would get $625, or get the benefit of it? A. Yes, sir. Q. What did he say? A. The way I understood the contract was written out $675.00. I had insurance to cover that. I still owe $137.00 on this wrecked car. Q. What did Mr. Sanders tell you about whether you would get $625.00? A. Yes, sir, or else I wouldn't have signed any release on $503.00. . . . Q. Did Mr. Sanders tell you if you signed the release you would get your $625.00? A. Yes, sir.''

G. W. Sanders testified, in effect, that he makes up salvage descriptions, sends them to the Memphis office, which in turn accepts bids from interested parties. That he told Eaton that Metzler would pay him $122 if he sold the salvage to him, that his company (appellant) got the bid and no one contacted Metzler but the company.

R. C. Tate, the dealer who sold the car to Eaton testified: "Here is what Mr. Sanders told me— he told me that the owner of a car wouldn't get the salvage in his name, * * * he couldn't even bid on it. He told me that was the law, but he told me in this case, being as Mr. Metzler had bid on this he would get Mr. Eaton to sign a release and Mr. Metzler could pay him because the title had never been changed. Q. In other words, the title was in Mr. Eaton? A. That is right, I sold it late one afternoon and the fellow hit him that night. That is why he wanted him to sign the release and let Mr. Metzler pay him. Q. Because it was Mr. Eaton's car? A. Because the title was still in Eaton's name.''

From the above, as we have indicated, we think that there was substantial evidence that the release involved here was obtained from Eaton by misrepresentation on the part of appellant's agent, Sanders. In other words, that the release was induced by Sanders' promises to Eaton, that Metzler would pay him, Eaton, in addition to the $503.00, $122.00 for the salvage. In the case of *Gold Shaft & Block Co.* v. *O'Keefe,* 200 Ark. 529, 139 S. W. 2d 691, we said: "There can be no doubt from the record in this case that appellee signed the release relying absolutely on Gouldman's statement that the property damage was not mentioned and that he would not have signed it otherwise, but was induced to believe by Gouldman that it was a release for the damages for personal injury. Under the circumstances the appellee had the right to rely on Mr. Gouldman's statement." In *Lyle* v. *Federal Union Insurance Co.,* 206 Ark. 1123, 178 S. W. 2d 651, we said: "In the instant case, the jury should have been instructed that if it found that appellants and appellees agreed upon a settlement of appellants' claim at the sum of $2,650 and appellants were led to accept and cash the drafts for a less amount, upon the assurance by agents of the insurance companies that the balance due under the compromise would be paid, appellants were not bound by the acceptance of these drafts and would be entitled to recover the amount of the damage as shown by the testimony, less the amount paid thereon." The principles of law involved in this Lyle Case would apply with equal force here. In the present case it appears that appellee, in his agreement with appellant, accepted the payment of $503 on the representation that there was a balance due, under the settlement, of $122 which would be paid to appellee and appellee was not estopped by accepting the draft for $503, since he was induced to accept it, as indicated, through misrepresentation, nor was appellee required to make any tender, in the circumstances. See *Unionaid Life Insurance Company* v. *Harkey,* 187 Ark. 87, 58 S. W. 2d 422.

Affirmed.